MARVIN, Judge.
Plaintiff was awarded judgment against his automobile insurer for the cost of repairing collision damage. The lower court rejected plaintiff’s demands for loss of the car, for loss of use of the car, and for financial loss and damage to his reputation because the mortgagee of the car and loss payee on the policy recovered judgment on the debt and garnished plaintiff’s wages.[1] Plaintiff appeals. We affirm.
Plaintiff wrecked his four-month-old Cadillac in December, 1973. The estimated cost of repairing known damage to the car was $4,038.93, which was less than its value at the time. The Cadillac dealer, the insurer’s adjuster, and plaintiff were in general agreement that some additional damage would likely be discovered once repairs were undertaken and that this additional damage would probably cost $300-$400 to repair. The dealer would not begin repair of the car until the plaintiff-owner authorized the repairs.[2]
The record indicates that plaintiff initially desired to “total” the car and that he refused or neglected to authorize its repair. In March 1974, plaintiff executed a proof of loss for $4,038.93 and the insurer forwarded to the loss-payee its check payable jointly to plaintiff and the loss payee.[3] Eventually in October 1975, plaintiff filed suit against the insurer.
*965 Plaintiff requested from the dealer in April 1976 and received in May 1976 a supplemental appraisal in the amount of $321.35. The supplemental appraisal was not revealed to the insurer or its counsel until trial of the case in September 1976.
The lower court gave judgment for the amount of the original estimate less deductible ($3,938) plus the supplemental appraisal ($321) with legal interest and costs, subject to a credit for the $3,938 tendered by the insurer by deposit into the registry of the court.
The policy provides the insurer’s obligation:
“Coverage E — Collision or Upset: To pay for direct and accidental loss of or damage to the automobile ... in excess of the deductible amount . . . ”
It also provides generally:
“12. Names Insured Duties When Loss Occurs — When loss occurs the named insured shall:
* * * * * *
(c) file proof of loss with the company . setting forth . . . the actual cash value [of the automobile] at time of loss, the amount, place, time and cause of such loss .
(Emphasis supplied)
******
“14. Limit of Liability . . The limit of the company’s liability for loss shall not exceed either (1) the actual cash value ... or (2) what it would then cost to repair or replace the automobile .
“The company may pay for the loss in money or may repair or replace the automobile . . . ”
Plaintiff contends once the insurer learned that plaintiff was not going to agree to the amount of damages, it then became the “duty” of the insurer to repair the automobile. Plaintiff’s contentions are misplaced. It is the duty of the insured to submit a proof of loss to the insurer setting forth, among other things, the actual cash value of the automobile and the amount of the loss (cost of repair). In cases where the automobile is not a “total loss”, the insurer is afforded the option of (1) either paying the insured and loss payee for the cost of repair or (2) repairing itself, or at its order, the damaged automobile.
The record overwhelmingly shows that the insurer elected the first option as soon as it was determined that the car was not a total loss. Once the insurer made this election, the insured could have decided whether or not to have the car repaired. It was not incumbent on the insured to release the insurer before the repairs were made. If the insured disputed the cost of repair, he could have obtained a more thorough estimate of the hidden damage (as he did shortly before trial), all without being required to order repair of his car. The trial court noted in its reasons for judgment:
“THE COURT: The letter of February 1974, indicates to me that the adjuster did tell plaintiff that they would pay for any additional damage revealed in the course of the repairs.
“From plaintiff’s testimony I do not gather that the question of payment for any hidden damages was the bone of contention or hangup that kept him from either authorizing the repairs or making a settlement with the insurance company.
“I don’t believe that insurance policy means that this company can, over protest of the insured, authorize the repairs of this automobile. I don’t believe that is what that means. I believe it took him to authorize it, and he didn’t authorize it and wouldn’t authorize it, although he had been asked.
“I don’t think the delay in making the repairs was the fault of the insurance company. I don’t think there is any way that the insurance company could have paid for hidden damages until they know what they are, unless there is some agreement about the amount, and there was none.
“The evidence also reveals, in my opinion, and counsel has confirmed it in oral argument, that the insurance company was never told until today of the supple *966 mental appraisal dated [April] 30, 1976, which showed additional damage of $321.35.
“According to my calculations, even with these damages, had they been revealed shortly after the accident, and considering the appraisal price of the salvage, and the cost of repairs first estimated, there would still not be a total loss situation.”
In summary, it was the insured’s duty to submit the proof of loss to the insurer. It was the duty of the insurer to make the election whether to pay or to repair. The insured vacillated in making the decision to repair the car and failed to submit his claim in full, to the insurer. We find no error below.
At appellant’s cost, judgment is
AFFIRMED.

. Plaintiff did not sue for penalties and attorney fees under L.R.S. 22:658.

. The repairman’s lien (R.S. 9:4501 and C.C. Art. 3217(2) attaches to the automobile when repairs are authorized by the owner or by someone whom he has clothed with actual or apparent authority. Andress Motor Co. v. Butler, 43 So.2d 913 (La.App. 2d Cir. 1950); Margot, Inc. v. Pearson, 336 So.2d 280 (La.App. 1st Cir. 1976).
The dealer’s employees testified that plaintiff would not agree to their requests that he authorize the repairs. One employee explained: “It is the owner’s vehicle and he must authorize the repairs. The [insurer’s] obligation is to the owner and not to [the dealer].”

. The insurer’s adjuster forwarded the proof of loss to plaintiff with a letter dated February 4, 1974. This letter read in part:
“We are taking the opportunity of writing this letter to you since you are apparently having some problem in making up your mind in regards to the proper disposition of your vehicle.
“We understand that the vehicle cannot be totalled when it is considered to be valued at approximately $5,845.00.
“We also have discussed this with our appraiser and the repair facility, Rountree Olds. They have both concurred that they will possibly be confronted with additional damage to this unit once repairs are started. However, both agree that it is impossible at this time to ascertain this amount of damage. This would have to be noted whenever it is discovered after repairs have been started.
“We are also forwarding this proof of loss to you so that we can eliminate the possibility of having to be confronted at a later date with higher labor rates. Since this accident-did occur in December of 1973 and repairs have not yet begun and it is already February, we do not feel that the insurance company would be responsible for any increase in labor rates.”